Filed 11/5/15  P. v. DeGuzman CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ANTHONY DeGUZMAN,<br><br>        Defendant and Appellant. | B258908<br><br>(Los Angeles County<br>Super. Ct. No. VA118241) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas McKnew, Jr., Judge.  Affirmed.

Sanger Swysen & Dunkle and Stephen K. Dunkle, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael C. Keller and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Anthony DeGuzman appeals from the judgment entered following his jury convictions for multiple sexual offenses.[1] The court sentenced appellant to prison for 15 consecutive terms of 15 years to life (counts 1 – 15, respectively), with concurrent determinate terms on the remaining counts. We affirm.

## ISSUES

Appellant claims (1) the trial court erroneously precluded him from cross-examining a witness as an expert and erroneously failed to give sua sponte a limiting instruction concerning Child Sexual Abuse Accommodation Syndrome (CSAAS) testimony, (2) appellant was denied effective assistance of counsel by his trial counsel's failure to impeach witnesses, (3) the prosecutor committed misconduct during jury argument, and (4) cumulative error violative of due process occurred.

## DISCUSSION

1. *The Court Did Not Erroneously Restrict Cross-Examination or Commit Instructional Error.*

a. *Pertinent Facts.*

Los Angeles County Sheriff's Detective Rudy Acevedo, the detective assigned to the present case, testified for the People at trial as follows. Acevedo had been a sworn peace officer for about 24 years and a detective in the Special Victims Bureau (SVB) of the Los Angeles County Sheriff's Department for about eight years. SVB investigated only cases of sexual assault and child abuse. Acevedo received special training to be an

---

[1] The jury convicted appellant on five counts of aggravated sexual assault of a child (Pen. Code, § 269, subd. (a)(1) (subsequent statutory references are to the Penal Code); counts 1, 4 , 7, 10 & 13), five counts of aggravated sexual assault of a child (§ 269, subd. (a)(4); counts 2, 5, 8, 11 & 14), five counts of aggravated sexual assault of a child (§ 269, subd. (a)(5); counts 3, 6, 9, 12 & 15), two counts of forcible rape (§ 261, subd. (a)(2); counts 16 & 19), two counts of forcible oral copulation (§ 288a, subd. (c)(2); counts 17 & 20), and two counts of sexual penetration by a foreign object (§ 289, subd. (a)(1); counts 18 & 21). There is no dispute as to the sufficiency of the evidence that appellant committed the present offenses; a detailed recitation of their facts is unnecessary to resolve this appeal. It is sufficient to state the evidence established appellant committed the offenses against R., his stepdaughter, in Los Angeles County beginning in about 2001 when she was nine years old.

SVB detective.  Acevedo had investigated, or had been involved in the investigation of, over 800 or 900 cases of child sexual assault.

During direct examination of Acevedo, the following occurred:  "Now, in your personal experience investigating crimes of child sexual abuse and the experience you've gained in the Special Victims Bureau, how common is it for a child to disclose later in life?"  The court overruled appellant's foundation objection and observed, "[Acevedo] is qualified as a detective in the Special Victims Bureau and he has been so for at least 8 or more years.  He can testify as to what he does in connection with that work."

Acevedo testified as follows.  It was very common for victims to disclose late.  This was called "late reporting."  In more than half of Acevedo's cases, victims reported after the fact, and it was usually "not an immediate disclosure."  The prosecutor asked Acevedo, "And in your experience when you're investigating cases where there's late reporting, do you talk to the victims about why they reported late?"  Acevedo replied he usually did.

The prosecutor later asked Acevedo what reasons victims gave him for late reporting.  Acevedo testified that many times victims felt ashamed, felt embarrassed, and had received threats, and that "there is a gamut of reasons why they don't disclose."  Acevedo also testified that many times "we deal with younger victims" and "we try to tend to give them the cognitive abilities of an adult.  We try to think that they think like an adult would think."  However, an eight-year-old and an adult think differently.

The following also occurred during direct examination:  "Q  So, in your experience, why would a victim who's been molested for a long period of time feel shame or embarrassment about talking about it to adults, or reporting it I should say?  [¶] The Court:  In your experience."  The court overruled appellant's hearsay objection, then observed, "[Acevedo] has eight years.  That's over five years which is the presumptive time in a particular specialty in the Sheriff's Department. . . . He can render his opinion with respect to what he has learned as to late reporting."

Acevedo then testified, "sometimes when victims are . . . molested, . . . usually the person that's doing the molesting is a close family member, like in this case, like a stepfather or a father." Following an objection, the court indicated Acevedo was to answer "without relating it to this case." The court then asked, "We're talking about your experience with respect to why late reporting [occurs], particularly with younger alleged victims, and you have indicated because of being a close family member, that is a reason why a young person does not report. Is that correct?" (*Sic*.) Acevedo indicated yes and later stated, "That is one reason."

The prosecutor subsequently asked Acevedo whether, in cases he had investigated involving late reporting, Acevedo had found "a commonality in the reasons" for late reporting. Acevedo said, "The commonality is that there is usually a link between the person that's actually doing the abuse, person that's either in a position of trust or of authority." (*Sic*.) Acevedo also stated, "the child doesn't want to abuse that trust or that authority. They feel that they are subservient to that person and they have to follow what they say."

During cross-examination, appellant asked Acevedo whether he had followed "POST"[2] guidelines during the investigation. During later discussions outside the presence of the jury, appellant maintained the court repeatedly had vouched for Acevedo because of his 800 or 900 investigations; therefore, appellant should be allowed to cross-examine Acevedo concerning the guidelines. Appellant's counsel indicated if Acevedo was "going to be declared an expert by the court," appellant's counsel should be allowed to cross-examine Acevedo as an expert, "including hypotheticals, but I'm not going to get into that."

---

[2] POST is an acronym for Peace Officer Standards and Training.

The court disagreed and stated "[Acevedo] is skilled as an officer in the [SVB]. He has that skill as part of his job. He would not qualify as an expert in anything other than what he is required as part of his job . . . ." The court indicated it had permitted appellant to ask about the guidelines. The court later stated, "This is a matter of his professional skills as a detective, not his skills as to the mental state, . . . or anything else. Only within his skill level, and you have been allowed to ask those questions, and you're still asking those questions."

The court denied it had said Acevedo qualified in court as an expert. The court indicated Acevedo was, however, a professional in his field and, as such, he could testify how he operated within his field. The court also indicated Acevedo was a detective doing his work as he understood it and, although appellant could cross-examine him on any deviation from guidelines, appellant could not pose hypothetical questions to Acevedo.

b. *Analysis.*

Appellant claims the trial court erroneously precluded him from cross-examining Acevedo on his expert CSAAS testimony and erroneously failed to give sua sponte a limiting instruction concerning CSAAS testimony. We reject the claim.

Detective Acevedo did not testify as an expert on CSAAS. He was not listed as an expert, nor was he qualified as one under Evidence Code section 720, subdivision (a). His testimony did not provide the jury with recent findings of professional research on a victim's reaction to child abuse. (Compare *People v. Bledsoe* (1984) 36 Cal.3d 236, 247; *People v. Bowker* (1988) 203 Cal.App.3d 385, 393-394.) He was not qualified to testify, nor did he testify, as a mental health professional. He did not explicitly refer to CSAAS, nor did he refer to the characteristics of that syndrome.

Detective Acevedo's testimony was not "limited to discussion of victims as a class." (*People v. Roscoe* (1985) 168 Cal.App.3d 1093, 1100.) Rather, he testified concerning those child molestation victims who were the subject of investigations that he

conducted or in which he had been involved.[3] His testimony on that issue was not "supported by references to literature." (*Ibid*.) Further, appellant's counsel denied to the trial court that he was going to pose hypothetical questions. We conclude the trial court did not abuse its discretion by precluding appellant from cross-examining Detective Acevedo as a CSAAS expert. The subject matter of the predicate direct examination testimony of Detective Acevedo was not expert testimony about CSAAS.

Finally, appellant, citing *People v. Housley* (1992) 6 Cal.App.4th 947 (*Housley*), argues the trial court erroneously failed to instruct sua sponte (using, e.g., CALCRIM No. 1193) that expert CSAAS testimony could not be used by the jury to determine if a molestation claim was true, but only to determine if the alleged victim's conduct was not inconsistent with having been abused. We reject the claim.

*Housley* stated, "in all cases in which an *expert* is called to testify regarding *CSAAS* we hold the jury must sua sponte be instructed that (1) *such* evidence is admissible solely for the purpose of showing the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested; and (2) the *expert's* testimony is not intended and should not be used to determine whether the victim's molestation claim is true." (*Housley, supra,* 6 Cal.App.4th at p. 959, italics added.)

However, it is not clear *Housley* is controlling. A number of appellate cases have concluded that the instruction appellant seeks is a limiting instruction that a court must give only upon the defendant's request. (*Housley, supra*, 6 Cal.App.4th at p. 957.) Moreover, as we have concluded that a *CSAAS* expert was not called to testify in this case and *CSAAS* testimony was not given, *Housley* is inapplicable. The trial court did not abuse its discretion or violate appellant's constitutional rights by restricting his cross-examination of Acevedo as discussed or by failing to give the limiting instruction.

---

[3] Acevedo's testimony relating what children told him was hearsay, the admissibility of which appellant does not challenge on appeal. He has thus forfeited the admissibility issue (Evid. Code, § 353, subd. (a)), and even if he challenged on appeal the admissibility of the hearsay, any error in its admission into evidence would be harmless.

2. *Appellant Was Not Denied Effective Assistance of Counsel.*

    a. *Pertinent Facts.*

Appellant is appealing following his conviction after a retrial; his first trial resulted in a hung jury and a mistrial. All testimony referred to below is from the first trial.[4] Joseph DeGuzman (Joseph), R.'s brother, testified that about December 1, 2010, he overheard a telephone conversation between R. and his mother Z. During the conversation, R. looked at Joseph and said, "We have something to blackmail your dad."

R. testified that, at the preliminary hearing, she admitted making a statement to Joseph about blackmail. The following occurred between R. and appellant's counsel at the first trial: "Q . . . does blackmail mean to you that you hold something over someone's head, and if you they [*sic*] don't give you something, then you . . . let the S hit the fan? [¶] A The truth be told, yes. [¶] Q So what were you hoping to get from your father? [¶] A Nothing. I just wanted the truth to be told." R. did not remember exactly what she said to Joseph, denied saying "I know a way we can blackmail your dad," and testified she "blurted something out like, 'Well, I have a blackmail.' " (*Sic*.) R. denied she was on the phone with Z. or that R. talked to Z. about blackmail. Z. denied R. mentioned blackmail to Z.

R. testified that on Father's Day, June 20, 2010, when Z. and appellant were getting divorced, R. sent to appellant a message saying, "Happy Father's Day again, [D]ad. Love you." She also testified she posted on a blog, "It's funny to watch them think they have all control when in reality all control is in my hands. Too bad they can't get that through their head. They are about to get a taste of their own medicine." R. did not know what that post concerned. Z. testified she sent to appellant a text message to the effect, "I decline your $10,000 and now I'm going to take everything that you have. I

---

[4]     The testimony below is derived from transcripts attached to appellant's motion for a new trial. There is no dispute the transcripts reflect testimony given at the first trial, that Joseph and Z. referred to in those transcripts are Joseph DeGuzman and Z. DeGuzman, R.'s brother and mother, respectively, and that Joseph was also known as JC.

was trying to be nice; you just turned me into a bitch. From here on out, only call me when it's pertaining to our kids. Otherwise, talk to my lawyer."

Appellant claims he received ineffective assistance of counsel because his trial counsel failed to impeach R. and Z. with their above testimony from the first trial. We reject the claim. Defense counsel made a sensible tactical decision in declining to introduce such evidence. The testimony was, at best, vague and, had the impeachment occurred, it would have provided both the victim and her mother with an opportunity to explain the damage caused by appellant's abuse and the victim's desire to have him be held to answer for his misconduct. While appellant asserts that this type of impeachment would have been useful, it was fraught with danger. Defense counsel's decision not to roll the dice cannot be held constitutionally inadequate. Appellant's ineffective assistance of trial counsel claim, therefore, fails and no violation of his constitutional rights occurred.

3. *No Prejudicial Prosecutorial Misconduct Occurred.*

During rebuttal jury argument, the prosecutor commented without objection, "A bailiff once told me, he goes, what a lot of defense attorneys like to do is throw up the fireworks while they pick your pocket. So you're looking up at the fireworks and picking your pocket."

Later, the prosecutor commented without objection, "And you're also, you know, you're writing the next chapter in the victim's life. You are writing the next chapter in R.'s life. R., who deserves to have justice, who deserves to have closure, you are writing the chapter in her life where she gets the happy ending, where she gets to have closure, where she gets to say, you know, I went through a very painful process, I stood up for myself, and you heard her say that repeatedly on the stand that she was learning to stand up for herself. You are helping reward her for standing up for herself in a way that people did not in her life, and you are writing the next chapter in her life for that."

Appellant claims the above two sets of comments constituted prosecutorial misconduct. The claim is unavailing. Appellant failed to object on the ground of prosecutorial misconduct and request a jury admonition with respect to either set of comments, and a jury admonition would have cured any harm. Appellant waived the issue of whether the comments constituted misconduct. (Cf. *People v. Gionis* (1995) 9 Cal.4th 1196, 1215; *People v. Mincey* (1992) 2 Cal.4th 408, 471.)

Even if the misconduct issues were preserved for appellate review, no prejudicial prosecutorial misconduct occurred from these brief, isolated comments on the absence of a plausible defense. (Cf. *People v. Cunningham* (2001) 25 Cal.4th 926, 1002-1003 [no prejudicial prosecutorial misconduct where prosecutor commented the job of defense counsel was to create straw men and put up smoke and red herrings]; *People v. Medina* (1995) 11 Cal.4th 694, 759-760 [no prejudicial prosecutorial misconduct where prosecutor asked the jury to "do the right thing, to do justice, not for our society, necessarily or exclusively, but for [the 18-year-old victim employee]."].) No violation of appellant's constitutional rights occurred.[5]

---

[5] As there were no cognizable errors in appellant's trial, we reject his claim that cumulative error violative of due process occurred.

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


JONES, J.[*]

We concur:



EDMON, P. J.



ALDRICH, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.